429 So.2d 1381 (1983)
Edward T. BERRIAN, Appellant,
v.
The NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a Amtrak, a Foreign Corporation, Appellee.
No. 82-894.
District Court of Appeal of Florida, Second District.
April 29, 1983.
V. James Facciolo, of Searcy & Facciolo, P.A., Jacksonville, for appellant.
Allen M. Blake, P.A., Tampa, for appellee.
LEHAN, Judge.
The plaintiff, Edward T. Berrian, appeals a final summary judgment entered for defendant Amtrak on Berrian's claim that his employment contract had been breached and his property rights denied when defendant terminated his employment. We affirm.
Berrian worked for Amtrak as a non-union employee from 1974 until August 1977 when he was terminated as a part of a general reduction in work force. Berrian sued Amtrak for the termination of his employment, alleging two grounds of wrongful termination. The first was that Amtrak's procedures manual constituted a contract of employment between Berrian and Amtrak. Berrian alleged that such contract was breached by Amtrak because Amtrak failed to comply with a portion of the procedures manual, adopted after Berrian's employment began, which provided as follows:
III. Involuntary Termination Procedure/Exempt and Non-Union Employees.
A. When termination of an exempt or nonunion employee is considered for any reason (including force reductions) the department head or his designee responsible for the employee will consult with the director of personnel on the following items:
.....
3. To ascertain other job opportunities in the event of a force reduction.
Berrian alleged that there were other jobs with Amtrak that Berrian was qualified and able to perform and that, if Amtrak had complied with the foregoing portion of its procedures manual, Berrian would not have been released from his job.
*1382 The second ground was that Berrian had a reasonable expectation of employment with Amtrak, which constituted a constitutional property right within the meaning of the Florida Constitution, statutes and case law; the case was argued on the basis that both federal and state constitutional rights were in issue. Berrian alleged that his job termination deprived him of that property right without due process of law.
In opposition to a motion for summary judgment filed by Amtrak, Berrian argued that two issues of fact remained: (1) whether Amtrak was a governmental entity so that his termination by Amtrak constituted state action that would subject Amtrak to constitutional scrutiny and (2) whether Amtrak complied with the termination procedures in its manual. In our view, neither of those two claimed issues of fact had determinative significance unless Berrian, in the first instance, showed a contract or property right which under his foregoing two grounds for relief was affected by the termination of his employment.
In the summary final judgment, the trial court dealt in an interrelated fashion with those alleged fact issues and the foregoing grounds for relief. As to one of those alleged fact issues  state action  the trial court found that Amtrak was not a governmental entity and that, therefore, there was no state action to be scrutinized under the constitutional guaranty that due process rights not be abridged by governmental decisions. As to the other alleged fact issue  compliance by Amtrak with the termination procedures in its manual  the trial court found that to be immaterial because neither of the alleged grounds for relief was shown to exist. That is, the trial court found that the desire to continue one's employment is insufficient to create a protected property right and that Berrian did not have an employment contract. The findings of the trial court were that Amtrak was free to terminate Berrian at any time because he was not hired for a definite term or duration of employment.
Berrian's first point on appeal involves his contention that Amtrak was a governmental entity subject to constitutional restraints on state action. Berrian contends that under Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 356, 6 L.Ed.2d 45 (1961), and the line of cases following Burton, the actions of a private business enterprise can be deemed state action for purposes of requiring constitutional compliance if a sufficiently close nexus exists between the private enterprise and the government. Amtrak argues that in later cases, including most recently Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477, (1974), the holding of Burton was limited to lessees of public property. Amtrak also contends that the test announced in Jackson is "whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." 419 U.S. at 351, 95 S.Ct. at 453 (emphasis added).
Amtrak argues that the record in this case conclusively shows an absence of any government involvement in the alleged failure of Amtrak to follow its termination procedure or in the decision to terminate Berrian's job. Amtrak further argues that even under a second theory known as the "public function" concept, developed since Burton and explained in Flagg Brothers v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), Berrian cannot show that a traditional public function was performed here by Amtrak.
Accordingly, the parties have raised a question of whether the only proper test for the existence of state action is the one enunciated in Flagg or whether either the Flagg or Burton principles could support a conclusion of state action. However, we do not reach that question since, as further explained in our disposition hereinbelow of the second point on appeal, we conclude that, even if we were to assume, arguendo, that the requisite state action existed, Berrian *1383 had no constitutional claim because he alleged no enforceable property right, contractual or otherwise. (For the same reason, we need not deal with whether or not the fact that the procedures manual was adopted after the commencement of his employment precluded his reliance on the manual.)
As his second point on appeal, Berrian argues that his justifiable expectation that his employment would not be terminated without Amtrak making a reasonable effort to find him an alternative position was property within the meaning of the state and federal constitutions. The United States Supreme Court, however, has stated that to have a property interest in a benefit such as continued employment,
a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it... . Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
In Roth, the Court found that an assistant professor at a university whose notice of appointment specified that his one-year term of employment would end on a certain date had a property interest in his employment up to that date but that no claim of entitlement to reemployment after that date, unless supported by contract terms, state statute or university rule or policy, created any legitimate claim to reemployment.
In Muller v. Stromberg Carlson Corp., 427 So.2d 266 (Fla. 2d DCA 1983), we found that certain employment policies did not constitute employment contracts, and we referred to a potential flood of litigation if judicial discretion were to be substituted for employer discretion. Muller points out that basic functions of the law would not be fulfilled if pure employment policy were converted to contractual obligation in the interests of employee job security.
Berrian fails to show circumstances which may give rise to a de facto contract right as in Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), where the Court held that a college teacher's continued employment, although not secured by a formal contractual tenure provision, might have been secured by statements in the college's official "Faculty Guide" or by a mutual understanding about tenure.
Although Berrian argues that a property interest was created by the policy in the portion of the Amtrak manual quoted above, we do not find that the manual made any promise to Berrian of continued employment. The policy did not promise that another position would be found for the employee or even that notice of any job opportunities would be communicated to the employee. Whether or not Amtrak complied with that policy, compliance would not have assured Berrian of employment. Even if there were to be implied a promise to offer him another job if there were ascertained to be another job opportunity, there was no promise of a particular term of any job. Only if there were a contract for a particular term would Berrian's employment not be terminable at will. He has not alleged that the parties had a mutual understanding, whether written or oral, formal or informal, that his employment would be continued for any particular term. In the final analysis, the complaint alleges, at best, a unilateral expectation on the part of Berrian which is insufficient to create a property right. As in Roth, Berrian "[i]n these circumstances ... surely had an abstract concern in being rehired, but he did not have a property interest... ." 408 U.S. at 578, 92 S.Ct. at 2709. See also *1384 Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Bleeker v. Dukakis, 665 F.2d 401 (1st Cir.1981); Metropolitan Dade County v. Peterson, 311 So.2d 119 (Fla. 3d DCA 1975).
AFFIRMED.
HOBSON, Acting C.J., and SCHEB, J., concur.