662 So.2d 986 (1995)
WILLIAM A. LINAFELT, APPELLANT,
v.
BEV, INC., A/K/A BEVERLY ENTERPRISES, INC., APPELLEE.
No. 95-707.
District Court of Appeal of Florida, First District.
November 3, 1995.
Rehearing Denied December 11, 1995.
*987 William C. Owen and Zollie M. Maynard, Jr. of Panza, Maurer, Maynard & Neel, P.A., Tallahassee, for Appellant.
Craig A. Dennis and Debra L. Foote of Dennis & Bowman, P.A., Tallahassee, for Appellee.
MICKLE, Judge.
William A. Linafelt, who was dismissed from his employment at a Tallahassee health care facility owned and operated by Beverly Enterprises, Inc., filed suit challenging his discharge and claiming that his former employer defamed him in a communication to a potential prospective employer. After Linafelt amended his complaint once as a matter of right without leave of court, the trial court dismissed several counts of the amended complaint, including the defamation count, with prejudice. Through subsequent amendments, Linafelt sought to allege a breach of *988 contract action based upon Beverly Enterprises' written policies and procedures and for intentional inference with an advantageous business relationship. The trial court entered an order dismissing both of these counts of the fourth amended complaint with prejudice. We agree with Beverly Enterprises that Linafelt was an "at will" employee and could not bring a cause of action for breach of an employment contract. However, since Linafelt had not abused the privilege of amendment when he sought to state a claim for defamation, the trial court should have granted him leave to amend in order to attempt to state a claim for defamation. Further, we agree with Linafelt that his fourth amended complaint did state a cause of action for intentional inference with an advantageous business relationship, and the trial court erred in dismissing this count with prejudice.
According to the allegations of his fourth amended complaint, William A. Linafelt began working at the health care facility in July 1989 as the supervisor of the maintenance department. When he was hired, Linafelt was advised that his employment would be governed by Beverly Enterprises' policies and procedures, and he signed a statement to that effect. He understood that if he secured passing grades for the maintenance department in its state and intra-company inspections and complied with the applicable policies and procedures, that he could expect a job for the rest of his life. The maintenance department received passing grades. In his yearly evaluations, Linafelt was rated "outstanding," leading to his promotion to supervisor of the housekeeping and laundry departments.
On August 12, 1992, Linafelt reported to work at 5:48 AM. He left work at approximately 11:00 AM to attend to his six year old son who was ill. Linafelt forgot to clock out and subsequently called a coworker and asked him to clock Linafelt out. The coworker clocked Linafelt out at 1:41 PM. Linafelt returned to work that evening and worked from 5:30 PM until 9:30 PM. When he left that evening, Linafelt manually changed his checkout time from 1:41 PM to 2:15 PM on his timecard. Thus, his timecard reflected approximately 8.5 hours of work when he had worked approximately 9 hours that day. Throughout his employment tenure, Linafelt maintained his timecard record in a loose manner. Sometimes he did not clock in at all and simply wrote the number of hours he worked on his timecard. Frequently, he manually changed the time on his daily time cards to reflect the actual time worked. He was never told that this was inappropriate and was always paid based on the number of hours reported on his timecard, whether machine tabulated or recorded by hand.
On August 17, 1992, Linafelt was discharged from his employment for falsifying a facility record, which was a category 1 offense under one of Beverly Enterprises' policies and procedures. For a category 1 offense, an employee is subject to immediate discharge without rehire privileges. Thereafter, Linafelt sought unemployment compensation benefits which Beverly Enterprises opposed on the grounds that he had been discharged for misconduct for falsifying his timecard record. The appeals referee concluded that the claimant's actions did not amount to "misconduct connected with his work," which is defined as an intentional act or course of conduct by an employee in violation of his duties and obligations to the employer.
Linafelt sought new employment with numerous prospective employers. One such prospective employer, who had expressed a willingness to hire Linafelt subject to an acceptable employment reference from his former employer, sought such a reference from the Tallahassee facility. An employee at the facility advised this prospective employer that Linafelt had been discharged for violation of a company policy and would not be considered for rehire "under any circumstances." Based upon this information, the prospective employer decided not to hire Linafelt. Thereafter, Linafelt filed suit, amending his complaint several times, in an attempt to state a cause of action for Beverly Enterprises' breach of its own written policies and procedures, defamation, and intentional interference with an advantageous business relationship. In successive orders, *989 the trial court dismissed all counts with prejudice.
An employee may be terminated at will, without a showing of cause, where the employment contract between the parties is indefinite as to the period of employment. Bryant v. Shands Teaching Hospital and Clinics, Inc., 479 So.2d 165, 167 (Fla. 1st DCA 1985). The agreement between Linafelt and Beverly  that if Linafelt received passing grades for his department and followed the policies and procedures he could expect a job for life  results in a finding that Linafelt was an "at will" employee. Russell & Axon v. Handshoe, 176 So.2d 909 (Fla. 1st DCA 1965), cert. denied, 188 So.2d 317 (Fla. 1966). Although Linafelt maintains Beverly Enterprises' policies and procedures amounted to an employment contract with him, unilateral policy statements cannot, without more, give rise to an enforceable contract. McConnell v. Eastern Air Lines, Inc., 499 So.2d 68, 69 (Fla. 3d DCA 1986). In Florida, policy statements are not employment contracts unless there is an express reference in the statement to a period of employment and the benefits to accrue therefrom. LaRocca v. Xerox Corp., 587 F. Supp. 1002, 1003 (S.D.Fla. 1984), citing, Muller v. Stromberg Carlson Corp., 427 So.2d 266, 268-70 (Fla. 2d DCA 1983). The policies and procedures at issue herein do not contain within them any expression of definiteness as to an employment contract or its duration. The case of Falls v. Lawnwood Medical Center, 427 So.2d 361 (Fla. 4th DCA 1983), upon which Linafelt relies, is distinguishable because there existed in that case sufficient evidence that the hospital personnel policies were part of a contract of employment with Falls.
Next, Linafelt's first amended complaint sought to state a claim for defamation but it was dismissed with prejudice. Amendments to pleadings are to be freely and liberally allowed in order that cases may be resolved on their merits, and doubts should be resolved in favor of allowing amendment unless and until it appears that the privilege to amend will be abused. David Miller Distributing Co., Inc. v. Florida National Bank at Arlington, 342 So.2d 856, 858 (Fla. 1st DCA 1977), citing Richards v. West, 110 So.2d 698, 701-702 (Fla. 1st DCA 1959). In this case, Linafelt was given no opportunity to cure any deficiencies in his alleged defamation count. When the defamation count was dismissed with prejudice, he had only amended his complaint once as a matter of right without leave of court, and it cannot be said that he had abused his amendatory privilege. Accordingly, the trial court improperly dismissed the defamation count with prejudice without giving Linafelt any opportunity to cure the defects and state a cause of action. Adams v. Knabb Turpentine Co., Inc., 435 So.2d 944, 946 (Fla. 1st DCA 1983).
Finally, we disagree with the trial court's conclusion that Linafelt's fourth amended complaint failed to state a cause of action for intentional interference with an advantageous business relationship. In Nowik v. Mazda Motors of America (East) Inc., 523 So.2d 769, 771 (Fla. 1st DCA 1988), this court ruled that the elements of the tort of intentional interference with an advantageous business relationship are (1) the existence of a business relationship not necessarily evidenced by an enforceable contract, (2) the knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with that relationship by the defendant, and (4) damage to the plaintiff as the result of the breach of the relationship. In this case, Linafelt has alleged that at the time the representative of the Tallahassee health care facility told the prospective employer that Linafelt had been discharged for violation of a company policy and would not be considered for rehire by Beverly Enterprises under any circumstances, it was established that these representations were factually erroneous and untruthful because Linafelt had not engaged in conduct which violated one of Beverly Enterprises' policies and it had been determined by the unemployment compensation tribunal that Linafelt was not guilty of misconduct in connection with his work. Linafelt alleged that at the time this declaration was made to the prospective employer, that the facility knew the person receiving the information was a prospective employer of Linafelt and that by electing to disclose this erroneous information to the prospective employer, the *990 facility "intentionally, flagrantly, outrageously, wantonly and willfully and with reckless disregard of the rights and privileges of [Linafelt], relayed erroneous, untruthful and misleading information which was calculated by or known to the Facility to be detrimental and injurious to [Linafelt's] prospective business relationship and which commentary, in fact, interfered with such prospective relationship." Thus, the allegations of the complaint sufficiently allege a cause of action for intentional interference with an advantageous business relationship.
Beverly Enterprises contends that it was entitled to a qualified privilege for this communication under section 768.095, Florida Statutes (1993) and Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984). However, a qualified privilege is an affirmative defense, and does not appear on the face of this complaint, and thus it should not have been considered on a motion to dismiss for failure to state a cause of action. Burch v. Brinkley, 382 So.2d 440 (Fla. 1st DCA 1980).
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
WOLF and WEBSTER, JJ., concur.